THE ROCK ISLAND PLOW COMPANY v. C. P. MEREDITH, Appellant.

Sale: COUNTERMAND. A written order for certain goods, which were to be shipped at a future date, was not countermanded by letters 1 merely requesting a delay in the shipment of such goods, while recognizing the existence of such contract.

APPROVAL. Where defendant ordered, subject to plaintiff's approval, certain goods which were to be shipped at a future date, such 3 approval was sufficiently manifested by the shipment of such goods within the time specified in such order.

ACCEPTANCE. The receipt of goods by the buyer becomes an acceptance of them precluding him from exercising a conditional right 4 to countermand the order for the goods, if the right of rejection is not exercised within a reasonable time.

SAME. The act of a buyer of machines after receiving them and paying freight on them, advertising them for sale and selling part of 2 them, is entirely inconsistent with a continuance of right to the property in the seller and, in the absence of any satisfactory explanation, conclusive of their acceptance by the buyer.

*Appeal from Cass District Court.*—HON. W. R. GREEN, Judge.

THURSDAY, FEBRUARY 2, 1899.

ACTION on account. Judgment on verdict directed for the plaintiff, and the defendant appeals.—*Affirmed.*

*De Lano & Meredith* for appellant.

*Flickinger Bros.* for appellee.

LADD, J.—The only item of dispute is that of one thousand two hundred and fifty dollars for twenty-five Rock Island hay loaders. It appears that Meredith, Dickey & Co., which firm the defendant succeeded in business, and of which he was a member, was engaged in the agricultural implement business at Atlantic and Griswold, Iowa. On the twelfth of

January, 1894, the firm executed two written orders for hay loaders to be delivered "on cars at Rock Island, Illinois, about June 1st, 1894, or as soon thereafter as possible," to be settled for November 1, 1894; but, in event one-half or less of the hay loaders were on hand at the close of the season, note was to be accepted payable November 1, 1895, with seven per cent. interest. This was taken by the plaintiff's agent, subject to its approval, and was by it indorsed "Accepted" the following day. Twenty-five of these hay loaders were included in the contract for the house at Griswold, and to be delivered there, and thirty were included in that for the Atlantic house, and to be delivered at that place. In writing to the defendant regarding another matter, January 18, 1894, the plaintiff said: "In this connection we beg not only to thank you for the past year's business, but for the prospects of business for the coming year, as represented by these contracts. We shall endeavor throughout the season to show our appreciation of this trade." On May 18, 1894, the defendant wrote to the plaintiff: "The present outlook for a hay crop is very poor, especially so if we do not have rain soon. Considering these facts, we would request you not to ship the hay loaders by June 1st, as we ordered, but please wait until you hear from us." And the plaintiff replied on the following day: "We have yours of the 18th inst., and, agreeable to your wishes, we will not ship the hay loaders before June 1st. In the meantime we hope you will still be favored with a good soaking rain, and thus insure a good hay crop, likewise a good hay loader trade." May 28th, following, the firm wrote the plaintiff that, "unless we have rain soon, the prospects for a hay crop here is very slim, and we would request you not to ship our order for hay loaders as soon as June 1st, as we will not be able to dispose of them unless we have rain soon, so we can look for a hay crop. Don't ship until you hear from us again anyway." These letters were written from

the Atlantic house. On May 24, 1894, the twenty-five loaders were shiped to the firm at Griswold, Iowa, and reached there about June 1st. The firm paid the freight, placed the loaders in their warehouse, advertised them for sale; its employe entered the item of credit on its books, and made no objection whatever until November 24th, following, about six months after their receipt. In the meantime one of the loaders was sold, and four have since been disposed of. The defendant, in remitting for three of those sold, retained the discounts provided for in the contract.

The appellant insists that the contract was not binding until the firm was advised of its approval; that, prior to such time, it might withdraw therefrom; and that it was entered into on an oral agreement that it might be countermanded in event the hay crop should prove a failure. But these matters are quite immaterial. Giving the letters the most favorable construction possible, and they amount to no more than a request for a delay in the shipment of the loaders. They recognize the existence of the contract, but do not contain even an intimation that the firm will withdraw therefrom or countermand any of its conditions, except as to date of delivery. The shipment before June 1st was doubtless because of no communication being received from the Griswold house, as the business of each with the company had been kept separate. The approval of the contract was manifest from the delivery of the loaders in accordance with its terms, even if not apparent from the correspondence. All conditions were complied with by both parties with the exception of payment. Having accepted all the benefits of the contract, the vendee may not evade its obligations on the ground that it had the right to do something it made no attempt to do. But were the hay loaders accepted?

It is well settled that the receipt of goods will become an acceptance of them if the right of rejection is not exercised

within a reasonable time.    *Hirshhorn v. Stewart,* 49 Iowa, 418; Tiedeman Sales, section 115; Benjamin Sales, section 162; *Foss-Schneider Brewing Co. v. Bullock,* 16 U. S. App. 323 (8 C. C. A. 14, and 59 Fed. Rep. 83); *Manufacturing Co. v. Hayes,* 155 Pa. St. 160 (26 Atl. Rep. 6).    What is an unreasonable delay, such as will warrant the inference of an acceptance, must depend on circumstances.    Here there appears no excuse for not returning the property or notifying the company of its rejection for so long a time.    It is said no statement was sent.    None was required, as the number, quality, and price were fixed by the contract.    Again, acceptance is fully established by the exercise of acts of ownership.    Meredith, Dickey & Co. not only paid the freight, and took possession of the loaders, but advertised them for sale, and actually sold one of them, before any pretense of rejection was made.    Four were disposed of afterwards.    The appellant asserts that these were received and sold on commission.    But no arrangement whatever for so doing was entered into, and the firm was not authorized to so treat the property without the assent of the company.    To avail itself of any objection to carrying out the contract, the firm should have refused to receive the property, or, if received, should have held it subject to the wish of appellee.    Advertising the loaders for sale, and selling part of them, was entirely inconsistent with the continuance of the right to the property in the vendor, and, in the absence of any satisfactory explanation, conclusive of their acceptance by the vendee.    Tiedeman Sales, section 115; Benjamin Sales, section 145; *Gray v. Davis,* 10 N. Y. 285; *Pinkham v. Mattox,* 53 N. H. 606; *Hill v. McDonald,* 17 Wis. 100.    As the evidence without dispute established the approval of the contract by the delivery of the loaders, and their acceptance by Meredith, Dickey & Co., the verdict was properly directed.    The motion to tax costs of additional abstract is overruled. —Affirmed.