CHOCTAW, O. & G. R. CO. v. COLORADO FUEL & IRON CO.

(Circuit Court of Appeals, Third Circuit. May 2, 1899.)

No. 10, March Term.

SALE—PERFORMANCE OF CONTRACT—PLACE OF DELIVERY.

Defendant railroad company purchased from plaintiff rails to be used in the construction of its road, to be delivered, at its option, at either one of two points on its road; the freight to be paid by defendant, and deducted from the purchase price. One of the points of delivery was further from the place of shipment than the other, and could be reached by either of two railroads, while but one of them reached the nearer point. Defendant made a private contract with the latter road, by which it

agreed to bill the rails to the further point at a fixed rate, but to actually deliver them at the nearer point, the defendant to transport them the remainder of the distance on its own road, and to receive a portion of the freight. Defendant then notified plaintiff to ship the rails to the nearer point, which it did. *Held*, that when the rails reached such point, and were there delivered to defendant, their delivery under the contract was complete, and defendant was not entitled to credit on the price for any freight beyond that actually paid to such point. If delivery was to be made at the further point, plaintiff had the right to ship by either road, and to whatever benefit it might have secured through the competition, of which right it was deprived by the direction given.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Samuel Dickson, for plaintiff in error.

A. B. Shearer, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BUFFING-TON, District Judge.

ACHESON, Circuit Judge. This action was brought by the Colorado Fuel & Iron Company against the Choctaw, Oklahoma & Gulf Railroad Company upon a written contract dated August 22, 1894, wherein the plaintiff sought to recover a balance alleged to be due to it on account of the price of steel rails delivered to the defendant under the contract. By the stipulations of the contract the defendant had the option to have the rails in question delivered either at El Reno or Oklahoma City, and in pursuance of written orders from the defendant the plaintiff delivered the rails at El Reno. Under the terms of the contract the defendant agreed to advance and pay the freight on the rails for the plaintiff at the points of delivery, and had the right to take credit therefor, and deduct the same, with interest, from the price of the rails. This provision as to freights is as follows: "The freight charged on the rails to be paid by the said second party as billed, and credit given to it by said first party in the monthly settlements; interest at 6 per cent. to be allowed said second party for such payments on account of freights." The only matter in controversy between the plaintiff and defendant in respect to the rails delivered at El Reno was as to the amount of money the defendant was entitled to take credit for and deduct from the price of the rails in settlements with the plaintiff as freights paid by it for the plaintiff on the deliveries at El Reno. The defendant deducted $4.15 a ton, while the plaintiff contended that the defendant should have deducted only $3.75 a ton,—the total difference being $3,637.74. Under the instructions of the court (which are here assigned for error), the jury allowed the defendant credit for freight paid by it on deliveries at El Reno at the rate of $3.75 a ton only. The verdict shows that the jury found that the rate of freight actually paid by the defendant on the rails delivered at El Reno was not $4.15 a ton, but only $3.75. This was indisputably established by the evidence. The defendant, however, claimed to be allowed the greater rate as against the plaintiff under an arrangement entered into between the railroad company which transported the rails to El Reno and the defendant company. The nature of that arrangement, with

the attending circumstances, we now proceed to explain. The mills of the plaintiff where the rails were manufactured, and from which they were to be shipped, were situated at Pueblo, Colo. Shipment of the rails from Pueblo to the defendant's line of road could be made by either one of two routes of transportation, both open to the plaintiff, namely, by the Chicago, Rock Island & Pacific Railroad, which intersected the defendant's line at El Reno, or by the Atchison, Topeka & Santa Fé Railroad, which intersected the defendant's line at Oklahoma City. The distance between El Reno and Oklahoma City is 29 miles, and that portion of the defendant's line between these points was completed and in use at the time of the delivery of these rails. Oklahoma City is to the eastward of El Reno, and these rails, it seems, were intended for use on the defendant's line eastward of Oklahoma City. The defendant company got the Chicago, Rock Island & Pacific Railroad Company to name a rate on the rails of $4.15 a ton from Pueblo to Oklahoma City upon the understanding that the latter company should transport the rails from Pueblo to El Reno at the rate of $3.75 a ton, and that the defendant company should transport the rails upon its railroad from El Reno to Oklahoma City at the rate of 40 cents a ton. This was altogether a private agreement between these two companies. The defendant company notified the plaintiff to deliver the rails at El Reno, which the plaintiff proceeded to do, shipping over the Chicago, Rock Island & Pacific Railroad, the only line available for the shipment under the notification. The brief of the plaintiff in error (the defendant below) contains the following statement explanatory of the transaction:

"The defendant, desiring to secure an Oklahoma City delivery, and at the same time assure to the Rock Island the haul of the rails (which latter could only be accomplished by notifying the plaintiff to deliver at El Reno, as otherwise the shipment might have been made over the line of the Santa Fé Company directly to Oklahoma City), directed the plaintiff to deliver the rails at El Reno, having, however, previously reached an understanding with the Rock Island Company that it would consign and bill the rails on the through rate to Oklahoma City."

. The learned trial judge instructed the jury, in substance, that the freight paid by the defendant to the Chicago, Rock Island & Pacific Railroad Company for the transportation of the rails from Pueblo to El Reno was what the defendant had a right to deduct under the contract sued on, and that the arrangement between the two railroad companies did not justify any greater deduction from the price of the rails; that, when the defendant elected to receive the rails at El Reno, and the plaintiff delivered them there, the plaintiff had performed its whole contract obligation; and that the expense of the after-transportation of the rails from El Reno to Oklahoma City was to be borne by the defendant company itself. These instructions, we think, were right. The contract of August 22, 1894, contemplated and provided for the reimbursement of the defendant for freight actually paid by it. This is the stipulation of the parties, and defines their rights in this particular. We cannot accept the suggestion that the delivery of the rails at El Reno was to the defendant in its capacity of a carrier. We think it quite clear that the delivery of the rails was under the contract of sale, and to the defendant as purchaser, and in

no other character.   The defendant company had the option to direct delivery either at Oklahoma City or El Reno.   It elected El Reno as the place of delivery, and so notified the plaintiff company.   Accordingly, delivery was there made.   That terminated the transaction. The plaintiff had no further concern in the disposition of the rails. The defendant company is not now to be heard to say, as against the plaintiff, that El Reno was not the place of delivery, but that Oklahoma City was.   It cannot be affirmed with any degree of certainty that the arrangement between the two railroad companies wrought no detriment to the plaintiff.   The notification to deliver at El Reno shut up the plaintiff to one route, and, it seems, was intended to do so. If the plaintiff had been notified to deliver at Oklahoma City, it would have had the choice of two routes of transportation.   That fixed freight rates of $4.15 a ton had then been established on these two lines from Pueblo to Oklahoma City is not satisfactorily shown.   The weight of the evidence, we think, tends rather to the contrary conclusion.   The president of the defendant company himself, speaking of the Chicago, Rock Island & Pacific people, testified: "After they made this arrangement with us, in order to enable them to the more conveniently carry it out, as I understand, they issued the tariff showing a rate of $4.15 to Oklahoma City."   Again, he stated: "They made no rate to El Reno.   *   *   *   The only published rate was to Oklahoma City." There is evidence to show that freight rates from Pueblo to Oklahoma City were then the subject of special contract, and that by the Atchison, Topeka & Santa Fé Railroad the plaintiff could have had the rails transported to Oklahoma City for $3.75 a ton.   The defendant had no right to deprive the plaintiff of an opportunity to procure that rate.   The judgment of the circuit court is affirmed.