PETROLEUM PRODUCTS DISTRIBUTING COMPANY, Appellee, v. ALTON TANK LINE and JAMES A. COAD, Appellants.

**Sales:** PERFORMANCE: DELIVERY THROUGH OTHERS. Plaintiff, a wholesaler of oils, received orders from defendant and filled the same through another company, which made the shipment direct to defendants, charging the plaintiff with the amounts of the consignments. *Held,* that the transaction did not amount to an assignment or rejection of the orders by plaintiff but to an acceptance and fulfillment of its obligations through the other parties.

**Same:** CONTRACT: ACCEPTANCE OF ORDER. An order for goods is not binding upon the parties until it has been accepted by the seller, but such acceptance need not be by express words; it may be shown by the acts of the seller done on the faith of the order, as shipment of the goods.

Same:  PLEADINGS:  ISSUES.  Where the answer in an action for the price of goods ordered simply alleged that plaintiff did not deliver the goods no issue regarding an acceptance of the order was thus raised.

Same:  PERFORMANCE OF CONTRACT:  DELIVERY.  Where an order for goods contains a direction for delivery at the town where the business of the buyer is conducted, with no more definite place designated, it is the general rule that delivery in the general receiving yards in the town and notification to the buyer is sufficient.

Same:  INSTRUCTION.  The instruction that the written orders provided for shipment of two cars, specifying the price, was not objectionable because using the word ''provided;'' as the orders in fact did so provide.

*Appeal from Sioux District Court.*—Hon. William Hutchinson, Judge.

Tuesday, March 24, 1914.

Action to recover amount claimed to be due on account for oil shipped by plaintiff to defendants.  Opinion states the facts.  Verdict and judgment for the plaintiff.  Defendants appeal.—*Affirmed.*

*McDuffie & Keenant* and *D. H. Sullivan,* for appellants.

*Gerrit Klay* and *Harding & Oliver,* for appellee.

Gaynor, J.—It appears from the record in this case that the plaintiff is a copartnership, doing business in Sioux City, Iowa, under the firm name of Petroleum Products Distributing Company; that the defendants are engaged as wholesalers of oils at Alton, Iowa; that on the 7th day of March, 1911, the defendants ordered from the plaintiff two car loads of gasoline through one R. R. Hicks, one of plaintiff's agents, and executed and delivered to said Hicks for the plaintiff, the following written order therefor: ''Petroleum Products Distributing Co., 828 First Natl. Bank Bldg., Chicago.   520

Farmers Loan and Trust Building, Sioux City, Iowa.    Ship Alton Tank Line, Town Alton, State, Iowa, Route Cmo. 2 cars 68-70 gr. gasoline.—16,000 gallons.    April 15th, K. O. M. CWP.    Not subject to cancellation.    Nothing recognized except what is embodied in this order.    Jas. A. Coad, Purchaser.''

On the 4th day of April, 1911, defendants ordered of the plaintiff one tank car of gasoline through plaintiff's agent, H. B. Sawyer, and executed and delivered to the plaintiff a written order therefor as follows: ''Petroleum Products Distributing Co., 828 First National Bank Building, Chicago. 520 Farmers Loan and Trust Building, Sioux City, Iowa. 01611.    Ship Alton Tank Line, Town Alton, State Iowa. Route 1 tank car gas. 63 gr.    Price 7½ ¢ f. o. b. Ref.    Ship April 25.    From Southern Ref.    Ex. D.    Not subject to cancellation.    Nothing recognized except what is embodied in this order.    Jas. A. Coad, Purchaser.    H. B. Sawyer, Salesman. P. S. R. 16.''

The plaintiff claims that acting under the first order and in pursuance of said order, it caused to be shipped to the defendants, at Alton, Iowa, 16,067 gallons of gasoline in the month of April, 1911, and that the same arrived in Alton during said month; that in pursuance to the second order, and in fulfillment thereof, it shipped to the defendants at Alton, Iowa, during the month of April, 1911, 8,042 gallons of gasoline, which arrived in Alton during said month.    Plaintiff claims that there is due it, on account of said shipments, the sum of $2,116.11, with 6 per cent. interest from the 1st day of June, 1911.    Plaintiff further says that the first order was to be delivered at nine cents per gallon and the second order at seven and one-half cents per gallon.

This petition was filed on the 22d day of August, 1911. On the 4th day of September, 1911, the defendants filed their answer, in which they admit that plaintiff is a partnership as alleged.    Admit that James A. Coad executed the order set out in plaintiff's petition, but aver that plaintiff had never,

at any time, delivered to defendants any portion of the goods mentioned in said orders, and defendants had never, at any time, accepted or received said goods, and deny each and every allegation of plaintiff's petition. On the 18th day of January, 1912, the plaintiff filed an amendment to its petition in which it alleges that, according to custom and trade usage in general use among all men in deals of this nature, all quotations or prices on oils and gasoline and contracts of this kind for the sale of oils or gasoline, mean and are understood by oil dealers to mean, unless otherwise specially provided, that the oil or gasoline is to be shipped f. o. b. refinery, based on Oil City, Pa., quotations; that is, that the purchaser pays the actual freight charges from the refinery, and, in addition pays the seller the difference between the freight charges actually paid, and what these charges would have been made from Oil City, Pa. To this amendment to the petition, the defendants filed no answer, denying or affirming. Upon the issues thus tendered, the cause was tried to a jury. A verdict having been returned for the plaintiff, and judgment rendered thereon, the defendants appeal, and allege:

First. There is no sufficient evidence that the plaintiff shipped the gasoline in controversy to the defendants.

The evidence tends to show the following facts: That the defendants delivered these orders to the agents of the plaintiff. That these agents delivered the orders to the plaintiff. That the orders were then turned over by the plaintiff to the Keystone Oil & Manufacturing Company to be filled. That they were accepted by this company, filled, and shipped by it to the Alton Tank Line Company. That it was done in this way: The Keystone Oil & Manufacturing Company had some arrangements or agreements with refineries to furnish oil, such as is covered by these orders. That the oil for the first order was procured by it from the Indian Refining Company, of Lawrenceville, Ill. That this company was directed to fill the order and

1. SALES: performance: delivery through others.

ship the oil direct to the defendants at Alton. That it did ship the oil on the 19th day of April, 1911. That the shipment was made in two tanks, S. T. L. 6162 and S. T. L. 6194. That the oil in the first tank was 68.1 gravity. In the second tank, 67.9 gravity. That the first tank contained 8,033 gallons. That the second tank contained 8,034 gallons. That these tanks, so shipped, reached Alton in due course of shipment. That the plaintiff acted through the same agency in procuring the fulfillment of the second order. That it was filled in the following manner: The Keystone Oil & Manufacturing Company called upon the Chelsea Refining Company to furnish the oil to fill the order. That they were unable to fill it promptly, and they directed the South Western Refining Company to produce the oil to fill the order. This oil was put in a tank and shipped to defendants on April 19, 1911, to Alton, Iowa. This shipment contained 8,078 gallons, and the oil was 63 degrees gravity. That all this oil reached Alton in due course of shipment.

It appears that the Indian Refining Company received pay for the oil furnished by it from the Keystone Oil & Manufacturing Company; that the oil furnished by the South Western Refining Company, to fill the second order, was also paid for by the Keystone Oil & Manufacturing Company; that the Keystone Oil & Manufacturing Company charged the amount, so paid by it, to the plaintiff, from which it appears that the orders were filled as required by the contract; that they were filled by the plaintiff, acting through others; that there was no assignment of the contract, or of plaintiff's obligation to fill the contract. It appears that it merely fulfilled its contract, through the agency of others. *Qui facit per alium facit per se.*

It is next contended by the appellant that the plaintiff never accepted the orders, sued on, given by the defendants.

Upon this question, the jury might well have found the facts as hereinbefore set out. It is elementary that a mere

order for goods, not accepted, does not bind the party, to
whom the order is given to make shipment, as
requested. Where there is an offer to pur-
chase, or, as in this case, an order for goods,
an acceptance is necessary to make a binding agreement be-
tween the parties. But where there is a written offer to pur-
chase, and an acceptance of that offer, it becomes a binding
contract between the parties. As stated in 1 Parsons on
Contracts, 475: "A mere offer, not assented to, constitutes
no contract, for there must be not only a proposal, but an
acceptance thereof. So long as a proposal is not acceded
to, it is binding upon neither party, and may be retracted."
The same author, at page 490, says: "Where there is a
written offer to sell, an acceptance constitutes the agreement,
if the offer is still standing; and it is presumed to be so until
the time fixed, or, if none were appointed, till it is expressly
revoked or countervailed by a contrary presumption. . . .
A bargain is closed where nothing mutual remains to be done
to give either party the right to have it effected. Until
both parties are agreed, either may withdraw an offer which
he has made."

2. SAME: con-
tract: accept-
ance of order.

Hilliard on Sales, section 20, says: "A proposal or offer,
therefore, must, in some way, be accepted to constitute a
sale."

These are elementary principles and need no citation
of cases to support them. They have been long recognized in
this state as elementary.

Acceptance of a contract may be proven by facts or cir-
cumstances, or by expressed words of acceptance. It may
be shown by proving acts done, on the faith of the order,
such as indicate an acceptance of the terms of the order. This
may be shown by the shipment of the goods ordered. There is
no evidence in this record that the defendants, after signing
and delivering to the plaintiff the order in question, ever
rescinded, or attempted to rescind, or cancel the orders. Nor
at the time the goods were delivered at Alton, did they indi-

cate an intention then, or was there anything in their conduct
to show, that they desired to rescind the order, other than is
found in their complaint that the goods were not of the char-
acter ordered.

The answer does not raise this issue. There is no allega-
tion in the answer that the plaintiff did not accept the orders.
The allegation of the answer is that they never delivered the
goods to the defendants, and defendants never
accepted or received the goods. Upon this
point, see *Aultman, Miller & Co. v. Nilson,* 112 Iowa, 634;
*Rock Island Plow Co. v. Meredith,* 107 Iowa, 498.

3. SAME: plead-
ings: issues.

The first order, given by the defendants to the plaintiff,
directs that the oil be shipped to the Alton Tank Line, at
Alton, Iowa. It directs it to be shipped in cars, the number
of gallons to be shipped, and the specific grav-
ity of the gasoline necessary to fill the order.
The second order makes the same directions,
except that it provides one tank car, 63 gravity, and directs
that it be from Southern Refinery; fixes the price at seven and
one-half cents per gallon, f. o. b.

4. SAME: per-
formance of
contract: de-
livery.

There was no specific direction in the order as to the
point, in Alton, at which the oil should be delivered to defend-
ants. Nor is there any evidence showing that the defendants
gave any specific directions to the plaintiff as to the point at
which it should be delivered other than Alton, Iowa. It ap-
pears that it was delivered at Alton, Iowa; that the defendants
made test of it there and rejected it, on the ground that it
was not of the gravity required by the contract, though it
appears this objection was not communicated to the plaintiff
until some time afterwards; that the only further objection
made was in the telegrams, and that was not as to the point
of delivery, nor the time of delivery, nor the place of delivery,
but that they could use but one car of sixty-eight gasoline;
that they desired crude oil, straight run from Pennsylvania,
claiming that that was all their trade demanded, and that was
all they could use.

The rule ordinarily is: Where goods are to be shipped by the seller, to the town where the business of the buyer is conducted, that the seller is bound to deliver, if sent by train, on the tracks at the town designated in the order, and, as a general rule, delivery is complete when the goods are delivered on the cars, in the general receiving yards, and the purchaser notified of that fact. It does not appear that there were any tracks running to the place at which ultimately the defendants desired the goods for use in their business. We think that delivery, at the place fixed in the contract, at the town designated in the contract where the buyer resides, or his business is conducted, where that is the only place fixed by contract, is a complete delivery, and fixes the liability of the defendant. If the defendant desired it delivered at any more definite place than that stated in the contract, he should have so stated in his order, or should have given the plaintiff notice so that it might have been delivered there. The general rule is: Delivery at the place designated is a complete discharge of the seller's obligation. See *Choctaw, etc., R. Co. v. Colorado Fuel Co.*, 93 Fed. 742 (35 C. C. A. 568); *Missouri, etc., Coal Co. v. Pomeroy*, 80 Ill. App. 144; *Houdlette v. Dewey*, 200 Mass. 419 (86 N. E. 790).

Some objection is urged by appellant to the instructions given by the court, and it is claimed that the court did not fully and clearly instruct the jury in respect to the claims made, and defenses interposed by defendants, and it is contended that the court said to the jury that if the plaintiff satisfied them, by a preponderance of the evidence, that it shipped to the defendants the gasoline, in compliance with the written orders, then the plaintiff would be entitled to recover, providing the gasoline was of the character required by the orders.

It is claimed that the evidence does not show, and there is no evidence to show, that the plaintiff shipped the gasoline. This complaint is not well taken. It was left to the jury to determine whether the plaintiff shipped the gasoline. As hereinbefore stated, the shipping of the gasoline to the defendants,

at the point designated in the orders, was an acceptance of the orders, and the court might well have assumed, under the showing made, that the shipment was made by the plaintiff, through the agency of others. It is not necessary that the shipment be made direct by the plaintiff. But, however this may be, the instruction was specific enough, in the absence of a request for more specific instructions, to present the issue to the jury, for their consideration, as to whether or not the oil was shipped by the plaintiff.

The only affirmative defense made by the defendants was involved in the statement that the gasoline was not of the quality ordered. This question was fully and fairly submitted to the jury in the fifth paragraph of the instructions, and the jury therein were told that, if they found that the gasoline was not of the character and quality specified in the order, their verdict should be for the defendants.

It is also complained that the court, in stating the issues to the jury, said to the jury: "The written orders provided for shipment of two cars, etc., at nine cents a gallon, and one car, etc., at seven and one-half cents a gallon."

5. SAME: instruction.    The objection is to the word "provided." We hardly see on what grounds the use of this word can be seriously criticised. The orders do so provide, and, to make the defendants liable, the plaintiff must show that it shipped to the defendants, at the place designated in the orders, the goods therein provided to be shipped.

The whole complaint of the defendants as to the manner of the trial, the sufficiency of the evidence, and the instructions given by the court, seems to rest upon the thought that these orders were simply offers on the part of the defendants, and that the evidence does not show that they were accepted by the plaintiff, thereby making a binding contract; that it does not appear that the oil was shipped by the plaintiff in pursuance of the orders; and the further controversy that the orders were assigned, or transferred by the plaintiff to others, without

the consent of the defendants, and therefore the defendants were not bound.

We think all these questions are disposed of in what has been heretofore said, and the case as made and submitted fully meets the defenses presented by defendant's answer.

The jury were told, and rightly so, that the plaintiff was entitled to recover, if at all, for 16,067 gallons at nine cents a gallon and 8,042 gallons at seven and one-half cents per gallon. 16,067 gallons at nine cents a gallon amounts to $1,446.03, and 8,042 gallons at seven and one-half cents a gallon amounts to $603.15, which makes a total of $2,049.18, and this the plaintiff was entitled to recover with 6 per cent. interest from June 1, 1911, to November 20, 1912. This makes $2,229.83, the amount for which judgment should, in fact, have been entered, and the judgment is modified to this extent. Plaintiff is entitled to judgment on the verdict for $2,229.83 with 6 per cent. interest from the date of the entry of the judgment.

Thus modified, the case is affirmed.—*Modified* and *Affirmed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concur.