**ALLIED STEEL AND CONVEYORS, INC., Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

No. 13854.

United States Court of Appeals
Sixth Circuit.

May 11, 1960.

George H. Cary, Detroit, Mich., George H. Cary of Cary, BeGole & Martin, Detroit, Mich., on the brief, for appellant.

Richard A. Harvey, Detroit, Mich., Richard A. Harvey and G. Cameron Buchanan, of Alexander, Cholette, Buchanan, Perkins & Conklin, Detroit, Mich., on brief, for appellee.

Before MILLER and CECIL, Circuit Judges, and WILLIAM E. MILLER, District Judge.

WILLIAM E. MILLER, District Judge.

The question presented on this appeal is whether a provision in certain written agreements between appellant and appellee purporting to indemnify appellee against damages resulting from its own acts of negligence was binding upon the parties at the time the damages were sustained.[1]

On August 19, 1955, Ford ordered from Allied numerous items of machinery and equipment. The consideration to be paid was $71,325.00. Under the terms of the order, Allied was to install the machinery and equipment on Ford's premises for an additional consideration of $6,900.00, with a provision that should Ford elect to install the machinery with its own labor, Allied would furnish a supervisor to direct the installation on a per diem basis. The order further provided that "the signing and returning to Buyer by Seller of the Acknowledgment Copy shall constitute acceptance by Seller of this Purchase Order and of all of its terms and conditions." The order was submitted on printed forms regularly used by Ford, and was designated "Purchase Order No. 15145." Item 15 of the printed form provided that if Allied was required to perform work on Ford's premises, Allied would be responsible for all damages or injuries occurring as a result of the fault or negligence of its own employees, including any damages or injuries to Ford's employees and property. Attached to the Purchase Order and made a part thereof was a printed form designated Form 3618, which included an indemnity provision broader in scope than Item 15 of the purchase order, requiring the Seller to assume full responsibility not only for the fault or negligence of its own employees but also for the fault or negligence of Ford's employees, arising out of or in connection with Allied's work. This provision in Form 3618, however, was marked "VOID." On December 16, 1955, Ford submitted to Allied its Amendment No. 1 to the purchase order, deleting the item of $6,900.00 for the cost of installation by Allied and providing that the installation would be done by Ford. The original Purchase Order and Amendment No. 1 were both duly accepted by Allied and the agreements were performed.

Subsequently, on July 26, 1956, Ford submitted to Allied Amendment No. 2 to Purchase Order 15145, and it is this Amendment which is the focal point of the present controversy. By the amendment Ford proposed to purchase additional machinery to be installed on Ford's premises by Allied, at a total cost of $173,700.00. Amendment No. 2, as did Amendment No. 1, provided:

"This purchase order agreement is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to buyer."

1. Appellant, Allied Steel & Conveyors, Inc., and appellee, Ford Motor Company, will be referred to herein as "Allied" and "Ford."

The copy of Ford's Form 3618 attached to Amendment No. 2 was identical to the the printed Form 3618 which was attached to the original Purchase Order, but the broad indemnity provision in Form 3618, making Allied liable for the negligent acts of both its own and Ford's employees, was not marked "VOID." The record makes it clear that the reason for not voiding the broad indemnity provision of Form 3618 attached to Amendment No. 2 was that the installation work on Ford's premises was to be performed by Allied's employees, whereas under the original purchase order as amended by Amendment No. 1 the installation work was to be done by Ford's own employees. Another pertinent provision of Form 3618 was:

"Such of the terms and conditions of Seller's Purchase Order as are inconsistent with the provisions hereinabove set forth are hereby superseded."

The acknowledgment copy of Amendment No. 2 was duly executed by Allied on or about November 10, 1956, and was received by Ford on November 12, 1956. At that time Allied had already begun installation of the machinery on the Ford premises, although the exact date upon which the installation was commenced is not shown in the record. On September 5, 1956, in the course of the installation, one Hankins, an employee of Allied, sustained personal injuries as a result of the negligence of Ford's employees. Hankins later filed an action against Ford in the District Court for the Eastern District of Michigan, Southern Division. After the complaint was filed, Ford added Allied, Hankins' employer, as a third-party defendant, relying upon the indemnity provisions of Form 3618, and demanding judgment against Allied " * * * for all sums that may be adjudged against the defendant, Ford Motor Company, in favor of plaintiff, John T. Hankins." The trial before a jury resulted in verdicts for $12,500.00 in favor of Hankins and against Ford, and in favor of Ford and against Allied for the same amount. This appeal by Allied followed denial by the District Court of its motion for judgment notwithstanding the verdict of the jury and entry of judgment against it in favor of Ford upon the third-party complaint.

It was Allied's insistence at the trial, as it is here, that the agreement evidenced by Amendment No. 2 which was signed and returned to Ford on November 10, 1956, was not in effect on September 5, 1956, when Hankins was injured; and further, that, in any event, it was the intention of the parties to void the broad indemnity provision in Form 3618 attached to Amendment No. 2, thus leaving in effect Item 15 contained in the original Purchase Order which made Allied liable only for its own negligence. Although the agreements contained in Amendment No. 2 were fully performed by the parties and Allied received full payment for its goods and services, the point made by Allied is that it did not become bound by the provisions of such amendment until November 1956, when it actually signed and returned to Ford the acknowledgment copy of Amendment No. 2. It argues that it was under no contractual obligation on September 5, 1956, the date of Hankins' injury, to indemnify Ford against Ford's negligent acts.

Allied first says that the contractual provisions evidenced by Amendment No. 2 were not in effect at the time of the Hankins injury because it had not been accepted at that time by Allied in the formal manner expressly required by the amendment itself. It argues that a binding acceptance of the amendment could be effected only by Allied's execution of the acknowledgment copy of the amendment and its return to Ford.

With this argument we cannot agree. It is true that an offeror may prescribe the manner in which acceptance of his offer shall be indicated by the offeree, and an acceptance of the offer in the manner prescribed will bind the offeror. And it has been held that if the offeror prescribes an exclusive manner of acceptance, an attempt on the part of the offeree to accept the offer in a different

manner does not bind the offeror *in the absence of a meeting of the minds on the altered type of acceptance.* Venters v. Stewart, Ky.App., 261 S.W.2d 444, 446; Shortridge v. Ghio, Mo.App., 253 S.W.2d 838, 845. On the other hand, if an offeror merely suggests a permitted method of acceptance, other methods of acceptance are not precluded. Restatement, Contracts, Sec. 61; Williston on Contracts, Third Ed. Secs. 70, 76. Moreover, it is equally well settled that if the offer requests a return promise and the offeree without making the promise actually does or tenders what he was requested to promise to do, there is a contract if such performance is completed or tendered within the time allowable for accepting by making a promise. In such a case a tender operates as a promise to render complete performance. Restatement, Contracts, Sec. 63; Williston on Contracts, Third Ed. Sec. 75.

■ Applying these principles to the case at bar, we reach the conclusion, first, that execution and return of the acknowledgment copy of Amendment No. 2 was merely a suggested method of acceptance and did not preclude acceptance by some other method; and, second, that the offer was accepted and a binding contract effected when Allied, with Ford's knowledge, consent and acquiescence, undertook performance of the work called for by the amendment. The only significant provision, as we view the amendment, was that it would not be binding until it was accepted by Allied. This provision was obviously for the protection of Ford, Albright v. Stegeman Motorcar Co., 168 Wis. 557, 170 N.W. 951, 952, 19 A.L.R. 463, and its import was that Ford would not be bound by the amendment unless Allied agreed to all of the conditions specified therein. The provision for execution and return of the acknowledgment copy, as we construe the language used, was not to set forth an exclusive method of acceptance but was merely to provide a simple and convenient method by which the assent of Allied to the contractual provisions of the amendment could be indicated. The primary object of Ford was

to have the work performed by Allied upon the terms prescribed in the amendment, and the mere signing and return of an acknowledgment copy of the amendment before actually undertaking the work itself cannot be regarded as an essential condition to completion of a binding contract.

■ It is well settled that acceptance of an offer by part performance in accordance with the terms of the offer is sufficient to complete the contract. An interesting discussion of the effect of part performance is found in the opinion of the Court of Appeals for the Eighth Circuit in Durasteel Co. v. Great Lakes Steel Corp., 205 F.2d 438. After citing numerous authorities from various jurisdictions, Chief Judge Gardner, speaking for the Court, quotes the following statement of the Supreme Court of Nebraska in Sheridan Coal Co. v. C. W. Hull Co., 87 Neb. 117, 127 N.W. 218, 220:

" * * * But what will constitute an acceptance depends frequently upon circumstances. A direct, unequivocal, written acceptance of an offer to purchase is satisfactory evidence of the fact, but, if the parties have not stipulated otherwise, the acceptance need not be in any particular form nor evidenced by express words; the delivery by the vendor of a part of the property referred to in the offer to buy, may take the place of words as proof of acceptance."

■ Other authorities are to the effect that the acceptance of a contract may be implied from acts of the parties. Malooly v. York Heating & Vent. Corp., 270 Mich. 240, 253, 258 N.W. 622; and may be shown by proving acts done on the faith of the order, including shipment of the goods ordered, Petroleum Products Distributing Co. v. Alton Tank Line, 165 Iowa 398, 403, 146 N.W. 52. Cf. Texas Co. v. Hudson, 155 La. 966, 971, 99 So. 714, 716. It would seem necessarily to follow that an offeree who has unjustifiably led the offerer to believe that he had acquired a contractual right, should

not be allowed to assert an actual intent at variance with the meaning of his acts.

■ It has been argued on behalf of Allied, by way of analogy, that Ford could have revoked the order when Allied began installing the machinery without first having executed its written acceptance. If this point should be conceded, cf. Venters v. Stewart, supra, it would avail Allied nothing. For, after Allied began performance by installing the machinery called for, and Ford acquiesced in the acts of Allied and accepted the benefits of the performance, Ford was estopped to object and could not thereafter be heard to complain that there was no contract. Sparks v. Mauk, 170 Cal. 122, 148 P. 926.

In Case Threshing Machine Co. v. Donalson, 10 Ga.App. 428, 73 S.E. 618, the defendant had signed a written order for the purchase of machinery. The order, which contained warranties as to kind and character of the machinery and other conditons, specifically provided that it must be signed by all parties before delivery of the goods. In an action by the seller to recover the purchase money, Donalson alleged a breach of the warranties. The Georgia Court of Appeals, in its opinion, stated:

"It is insisted that the plaintiff was not bound by the express warranties unless the contract was actually signed by it. We do not concur in this view. When the plaintiff performed the contract according to its terms this was an acceptance, and it followed that the plaintiff was thereupon bound by all the warranties, terms, and conditions contained in the contract, just as the defendant was also bound." 10 Ga.App. at page 431, 73 S.E. at page 619.

A situation analogous to the one now before us is found in Columbia Weighing Machine Co. v. Vaughan, 123 Kan. 474, 255 P. 973, 974. In that case, Vaughan had signed an order for a weighing machine. The order contained this statement:

"It is understood you are to supply us with any mechanical parts required for the machine for a period of five years without charge. Whenever we may want a part, we are to inform you by registered mail. * * * All orders are subject to acceptance of the company."

The Columbia Company did not indicate its acceptance in writing, but shipped the machine. When Columbia brought action to recover the purchase price, Vaughan interposed the defense that his offer had not been accepted so as to bind Columbia to also furnish parts for the machine for five years without charge. The Supreme Court of Kansas in deciding the case enunciated the following principles:

"Defendant argues that there is a radical distinction, in regard to communications, between offers which ask that the offeree *do* something and offers which ask that the offeree *promise* something, and that in offers of the former kind communication of the acceptance is ordinarily not required, while in offers of the latter kind communication of the acceptance is always essential, citing 13 C.J. 284. The cases cited in support of the text are not offers of the kind we have before us. There may very well be an offer of a promise to do, the acceptance of which does not require, or contemplate, immediate action, but only a promise of future action. Such an offer could be accepted only by the offerer making the promise, since no immediate action is required of him. But this is not the case before us. Here defendant offered to buy a machine, not at some time in the future, but to make a present purchase, with the understanding, which means upon the conditions, stated in the order * * *. Plaintiff, by shipping the machine, accepted the offer, and thereby the offer became a contract, the terms and conditions of which became binding on both parties. But, defendant argues, this did not obligate plaintiff to furnish necessary parts for 5 years free of charge. This

argument is not sound. The order was not divisible in this respect. When plaintiff accepted the offer, it was accepted in its entirety. It could be accepted in no other way. Both parties became bound by all of its conditions and provisions.

\* \* \* \* \* \*

"The contract consists of the offer and its acceptance. The acceptance may be shown by any act or conduct clearly evincing an intention to accept the offer made. \* \* \* The delivery of the merchandise ordered clearly evinces the intention to accept. In Maine v. Howell, 7 Ga.App. 311, 66 S.E. 804, it is said: 'This was the very highest form of acceptance.' "

The Supreme Court of Michigan cited and approved the Columbia Weighing Machine Co. case, supra, in Ludowici-Celadon Co. v. McKinley, 307 Mich. 149, 11 N.W.2d 839, 840, in which it appeared that appellant's salesman offered to furnish appellee a quantity of tile at a certain price. The offer contained the following language:

"This proposal is good for 30 days. Its acceptance will constitute a contract, subject to the approval of our executive department at Chicago."

The offer which was also signed by appellee was returned to appellant. Appellant thereupon wrote a letter to appellee which read:

"We acknowledge, with thanks, receipt of our proposal \* \* \*. We are passing this to our Executive Department for consideration and attention."

Appellee received no further writing from appellant. However, appellant began partial deliveries which were received and paid for by appellee. Appellee thereafter discovered that it could not use all of the tile covered by the proposal, and it refused to accept further deliveries. In reviewing an action brought by the seller to recover the full purchase price, the Court held that the receipt by the appellee of the partial deliveries constituted an acceptance of appellant's offer and consummated the contract so as to bind both parties, stating in its opinion (307 Mich. at page 154, 11 N.W.2d at page 841):

"Had the plaintiff seller refused to deliver the remainder, the defendant buyer could have recovered damages for the breach of the contract. It must, therefore, follow that the seller is likewise entitled to recover damages because of the buyer's refusal to accept the remainder of the tile."

These authorities, while not in all respects parallel are closely analogous to the present case and we think support our conclusion that Amendment No. 2, with all of its provisions and conditions, became a binding bilateral contract at the time Allied, with Ford's knowledge and consent, began performance by delivery and installation of the machinery upon Ford's premises.

As further grounds for reversal, Allied submits (1) that the parties intended to void the broad indemnity provisions in the copy of Form 3618 which was attached to Amendment No. 2 and thus leave in effect Sec. 15 of the original Purchase Order whereby Allied assumed responsibility only for its own negligence, and (2) that Amendment No. 2 is ambiguous and, under the well recognized rules of construction, should be construed against Ford who was responsible for its drafting.

As to the intent of the parties, the record discloses that the jury found that there had been a meeting of the minds in regard to the provisions of Amendment No. 2, including Form 3618 which was attached thereto. We think this finding is amply supported in the record, but in any event, Allied is confronted with the cardinal rule that, in the absence of fraud or wilful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions. W. T. Raleigh Co. v. Bowen, 308 Mich. 122, 13 N.W.2d 230; Richeson v. Wagar, 287 Mich. 79, 85, 282 N.W. 909; International Trans-

portation Ass'n v. Bylenga, 254 Mich. 236, 239, 236 N.W. 771; Warren v. Federal Life Ins. Co., 198 Mich. 342, 353, 164 N.W. 449. And Allied, having received the purchase order amendment and having undertaken to supply the equipment and to perform the services called for by such amendment, cannot be heard to complain that it did not read the amendment and is not bound by its provisions and conditions.

Finally, we find no merit in Allied's contention that Amendment No. 2 is ambiguous and that its provisions are contradictory. As heretofore stated, the indemnity provision in the copy of Form 3618 which was attached to the original Purchase Order was voided. Page 1 of Amendment No. 2 contained spaces, or boxes, by which it could be indicated whether the original Purchase Order was being amended with respect to "Price", "Terms", "F. O. B.", "Routing", "Quantity", and "Specifications", and only the spaces, or boxes, opposite the words "Price" and "Specifications" were checked. This fact is made the basis of Allied's argument that the contract is at least ambiguous and should be construed against Ford, since the indication was that the amendment was to affect only prices and specifications and not the "terms" of the contract with respect to indemnity or otherwise. But Page 3 of Amendment No. 2, contained a single paragraph which would have attracted attention upon the most casual examination, reading as follows:

"Form 3618 Revised June, 1955 attached hereto is made a part of the terms and conditions of this Purchase Order. In those cases where this attachment may be in conflict with the terms and conditions appearing on the reverse side of this order, the form #3618 shall apply."

This provision left no doubt that the broad indemnity provision was to govern, and it seems clear to us that if Allied did not know the contents of the amendment, its failure was due simply to the fact that it did not read the amendment in its entirety and not to any ambiguity in the amendment itself. This conclusion is strengthened by the fact that the agreement was subsequently formally executed by Allied and the obligations created thereby were fully performed by both parties.

The judgment of the District Court is Affirmed.